477 So.2d 824 (1985)
LEVITZ FURNITURE CORPORATION and Travelers Insurance Company
v.
J.B. HORNE, Jr.
No. 85-CA-246.
Court of Appeal of Louisiana, Fifth Circuit.
October 10, 1985.
Rehearing Denied November 18, 1985.
*825 Joseph F. Clark, Jr., Hammett, Leake & Hammett, New Orleans, for plaintiffs-appellants.
Robert J. David, Kier, Gainsburgh, Benjamin, Fallon & Lewis, New Orleans, for defendant-appellee.
Before BOUTALL, GRISBAUM and DUFRESNE, JJ.
GRISBAUM, Judge.
This is an appeal from a judgment awarding worker's compensation and related benefits, along with statutory penalties and attorney fees. We affirm.
On February 3, 1976, J.B. Horne, Jr., then employed by Levitz Furniture Store, was injured when a wooden chair collapsed from under him. As a result, he underwent a double level lumbar fusion in August, 1977, an operation deemed successful by the attending physicians. Travelers Insurance Company, Levitz' compensation carrier and co-appellant, commenced payment of compensation to Mr. Horne. These payments included reimbursement for Horne's in-home nursing assistance expenses in an amount agreed upon by Travelers and Horne.
In June, 1982, a tort suit over the accident took place in the Twenty-Fourth Judicial District Court. Mr. Horne successfully recovered $150,000 from defendant Liberty Furniture Company, and Travelers was awarded from this amount the total of all worker's compensation payments made to date and for all medical expenses paid. (As of June 18, 1982, worker's compensation payments amounted to $28,210 and medical expenses to $4669.38.) That judgment was appealed to the Fifth Circuit and was affirmed. Horne v. Liberty Furniture Company, 452 So.2d 204 (La.App. 5th Cir.1984), writs denied, 456 So.2d 166, 456 So.2d 171 (1984). Counsel for both parties agreed to submit the medical evidence taken in the tort suit to the lower court for its review by transcript.
At the trial in 1984, the trial judge found Horne totally disabled and ordered continuous weekly payment of benefits for the duration of the disability and also awarded $62,455 for medical, hospital, and home health care expenses. The judgment also awarded 12 percent of the above amounts as a statutory penalty for arbitrary and capricious behavior on behalf of the employer, plus attorney's fees of $20,000.
*826 We are called upon to determine:
(1) whether the trial court was "clearly wrong" in awarding this employee benefits at the rate of $85 per week from January 24, 1984 throughout the continuance of his total disability and in finding the employer to be arbitrary, capricious and without probable cause in terminating this benefit by assessing the statutory penalties of 12 percent;
(2) whether the trial court erred in awarding $62,455 for medical, hospital and home health care expenses, through the date of trial, without prejudice to his (employee) right to recover such additional expenses as he may be entitled to receive subsequent thereto, along with its finding that the employer was arbitrary, capricious and without probable cause in terminating these benefits and thereby assessing the statutory penalties on the aforesaid amounts; and
(3) whether the trial court abused its wide discretion in assessing against the employer $20,000 as attorney fees.
In addressing the initial issue, our jurisprudence in McBroom v. Argonaut Insurance Company, et al, 370 So.2d 212, 214 (La.App. 3d Cir.1979) has given us the jurisprudential guideline that the provisions of a statutory law in Louisiana Revised Statute 23:1221 states that an injured employee is totally disabled, either permanently or temporarily, only if he is incapable of returning to any type of gainful employment whatsoever, or although capable, he is unable to return to any type of gainful employment because of substantial pain. Additionally, the same court stated that the physical inability to return to work and the inability to return to work because of substantial pain, are questions of fact.
We note the trial court, in its reasons for judgment, stated, "the overwhelming medical and lay testimony leaves no doubt that the plaintiff is totally and permanently disabled from any type of gainful employment...." Our review of the record shows Dr. Gernon Brown, who performed the double level spinal fusion, stated, at the time of trial, that the operation was successful but Horne was still disabled and experiences "a lot of pain in his back and his lower extremity." He further pointed out that Horne lost enough weight to allow him to do a myelogram and that he never felt that Horne could be rehabilitated, although efforts were made to do so. Additionally, Dr. Stuart Phillips testified that he assumed care of Horne in 1980, and he determined a spinal stenosis condition and further stated that after his first examination in 1980, he determined that Horne's disability was total for occupations that required him to stand or walk. After determining that additional surgery would be unnecessary, Dr. Phillips prescribed pain medication, which Horne is entitled to refill as needed. Thereafter, Dr. Phillips found no improvement in Horne's condition and finally concluded that Horne would have pain in his back and his legs for the rest of his life.
After a careful review of the record, bearing in mind our jurisprudential guidelines, we cannot say that the trial court did not have a reasonable, factual basis for its finding. Arceneaux v. Domingue, 365 So.2d 1330 (La.1978). Accordingly, the trial court did not err in awarding Horne benefits at the rate of $85 per week from January 24, 1984 throughout the continuance of his total disability.
We now determine whether the trial court erred in finding the employer arbitrary, capricious or without probable cause in terminating the weekly benefits. Our statutory law in Louisiana Revised Statute 23:1201.2 provides:
Any insurer liable for claims arising under this Chapter, and any employer whose liability for claims arising under this Chapter is not covered by insurance, shall pay the amount of any claim due under this Chapter within sixty days after receipt of notice, when such failure is found to be arbitrary, capricious, or without probable cause, shall subject employer or insurer, in addition to the amount of the claim due, to payment of all reasonable attorney's fees for the prosecution *827 and collection of such claim, or in the event a partial payment or tender has been made, to payment of all reasonable attorney's fees for the prosecution and collection of the difference between the amount paid or tendered and the amount due. Any employer or insurer who at any time discontinues payment of claims due and arising under this Chapter, when such discontinuance is found to be arbitrary, capricious, or without probable cause, shall be subject to the payment of all reasonable attorney's fees for the prosecution and collection of such claims. The provisions of R.S. 23:1141 limiting the amount of attorney's fees shall not apply to cases where the employer or insurer is found liable for attorney's fees under this Section. The provisions of R.S. 22:658 shall not be applicable to claims arising under this Chapter.
Our jurisprudence in Lee v. Smith, 248 La. 16, 176 So.2d 413 (1965) states that whether the discontinuance of compensation payments was arbitrary, capricious, or without probable cause depends primarily upon facts existing and known to the employer at the time payments were stopped. Additionally, we have previously stated in Frix v. Supreme Catering Service and Aetna Insurance Co., 444 So.2d 710 (La.App. 5th Cir.1984) and Millet v. Container Corporation of America, 459 So.2d 589 (La.App. 5th Cir.1985), writ denied, 462 So.2d 211 (La.1985), that a realistic standard in making this determination is simply whether the employer and its insurer had a "reasonable" basis for a dispute as to the claimant's entitlement to benefits. The weekly benefits here were discontinued in January, 1984. Travelers and Levitz claim that because Horne sought two positions in Governor Edwin Edwards' administration, he should be denied weekly benefits. However, under the legal test of disability, Horne may seek work and actually be employed, yet still be totally disabled under the substantial pain doctrine. Calogero v. City of New Orleans, 434 So.2d 177 (La.App. 4th Cir.1983) and cases cited therein, on remand from 397 So.2d 1252 (La.1980); Rachal v. Highlands Insurance Co., 355 So.2d 1355 (La. App. 3d Cir.1978), writ denied, 358 So.2d 645 (La.1978). The record shows there had been no notification received by the employer or its insurer from any of the attending physicians of any medical recovery or rehabilitation. Indeed, Dr. Phillips testified that Horne would experience pain in his back and legs for the rest of his life. Accordingly, penalties were properly assessed on benefits due Horne on the $85 per week amount.
The trial judge awarded a sum of $62,455 for medical, hospital, and home health care expenses. An examination of the record reveals that this total was discerned by adding Horne's claim for hospital bills ($3405) to the total of in-home care bills due and unpaid ($59,050).
As to the hospital bill of $3405: The patient had continued to complain of pain when Dr. Phillips took over treatment from Dr. Brown. Dr. Phillips testified that he was uncertain as to whether another decompression was necessary, and therefore sought a myelogram and a computer axial tomogram (CAT scan) of Horne. In order to obtain this information, Dr. Phillips admitted Horne to St. Charles General Hospital on March 27, 1981. It is clear from the record that this expense was incurred as a direct result of the injuries sustained on the job in 1976, and no evidence was introduced to indicate otherwise. Accordingly, the employer was acting in an arbitrary and capricious manner in not paying this bill and was correctly held for statutory penalties.
Regarding the claim for home health care bills ($59,050): Travelers and Levitz commenced payments for in-home care in 1976 and paid Horne for approximately two and one-half years. While Horne does not need 24-hour a day assistance, he does need help with basic, personal hygiene tasks, cleaning himself, and putting on the prescribed back brace. The record reflects that without such assistance, Horne would experience significantly more pain than he normally feels. Under *828 Louisiana Revised Statute 23:1203, housekeeping and other such chores are not compensable, Lewis v. Rapides Parish School Board, 430 So.2d 388 (La.App. 3d Cir.1983), writ denied, 434 So.2d 1096 (La.1983), and only minimal medical-related assistance required to relieve pain suffered as a result of a compensable accident is covered. Gourdon v. Rockwood Insurance Co., 368 So.2d 1156 (La.App. 3d Cir.1979). Neither employer nor insurer were advised by any of the physicians that Horne no longer required these out-patient "services." To the contrary, Dr. Brown affirmed in December of 1978 that his patient needed some assistance during the day. Travelers responded by offering a lower per diem amount, which was refused by Horne. In light of the testimony of Ms. Nora Ashby, a provider of unlicensed nurses for in-home care services, the daily rate assessed against the employer was reasonable for eight hours of assistance per day. We therefore agree with the trial court's finding that the employer is legally bound to pay these benefits.
We now turn to decide whether the termination of these payments was arbitrary and capricious. At the time home care payments were discontinued, Travelers was acting on reports, followed by the December 9, 1978 letter received from Dr. Brown. This letter stated that Mr. Horne did not need 24-hour nursing care but did need "some assistance with the portion of the day." Also, Dr. Brown advised Travelers that the operation had been successful, rehabilitation would be possible if Mr. Horne would lose weight, and that Dr. Brown believed Mr. Horne had not reached maximum medical recovery. For several months leading up to termination of these payments, Dr. Brown emphatically urged Horne to lose weight and increase his activities, and Dr. Brown states in several letters to Travelers that the patient showed no loss of weight.
While Travelers and Levitz may rely on competent medical advice in refusing benefits, it does not seem that Dr. Brown's advice was so clear as to allow termination. Dr. Brown was still attempting to make Horne lose weight, and still acknowledging a chance of rehabilitation, although the outlook was significantly worse by December, 1978. As stated previously, Levitz was never advised of Horne's recovery or rehabilitation and was never told that Horne could take care of himself. Therefore, we find the termination of these payments arbitrary and capricious. The employer is therefore also liable for 12 percent of the $59,050 as a penalty assessed under Louisiana Revised Statute 23:1201.2.
We now turn to the final issue. Our statutory law states that an employer or insurer who discontinues payment of claims arbitrarily, capriciously, or without probable cause shall be subject to the payment of all reasonable attorney's fees for the prosecution and collection of such claims. Louisiana Revised Statute 23:1201.2. When attorney's fees are awarded in a workmen's compensation case because of arbitrary and capricious nonpayment of benefits, the attorney's fees are deemed to be a penalty, and the value of the attorney's fees need not be proven. Orgeron v. Tri-State Road Boring, Inc., 434 So.2d 65 (La.1983). A trial judge is allowed to call upon his own experience and expertise in determining how much time and effort a lawyer has put into the preparation of the case. Lorque v. Jack Eckerd Drugstore No. 523, 405 So.2d 1097 (La. App. 4th Cir.1980). Additionally, in light of the record, we note that this attorney was not dealing simply with weekly compensation payments but also with the $62,455 worth of other benefits he was able to obtain for his client in this litigation. We are cognizant of the prolonged nature of this case and the difficulty of separating the tort effort from this litigation. We also consider the efforts on appeal and find that the award of $20,000 is not unreasonable, nor does it demonstrate a clear abuse of the trial judge's wide discretion.
For the reasons assigned, the judgment of the trial court is affirmed; all costs of *829 this appeal are to be assessed against the appellant.
AFFIRMED.