CULPEPPER, Judge Pro Tern.
In this worker’s compensation action, plaintiff, Janice Dumas Ainsworth, appeals a trial court judgment in favor of defendants, Wells Lamont Corp. and its insurer, Protective Ins. Co., denying her claim for total and permanent disability benefits, penalties, and attorney’s fees. We reverse and render judgment for plaintiff, finding her permanently partially disabled.
The substantial issues are: the extent of plaintiff's disability, whether total and permanent or permanent partial under the Worker’s Compensation Law in effect on July 20, 1981, the date of the accident, and whether plaintiff is entitled to penalties and attorney’s fees?
Plaintiff had been employed eight and a half years as a “stitcher” by Wells Lamont, *535 a manufacturer of leather work gloves, when she felt a sharp pain in her left wrist while sewing the fingers of a glove on July 20, 1981. After taking a couple of days off, plaintiff returned to work but was unable to perform her duties because of pain in her hand. Her injury was later diagnosed as DeQuevains disease, an inflammation of the wrist at the base of the thumb, that is caused by repetitive movements.
Reconstructive surgery on her left wrist was performed by Dr. Ledbetter, an orthopedist, in December, 1981. Dr. Ledbetter’s reports and his deposition were introduced into evidence at trial. The doctor treated plaintiff approximately nine months before releasing her in August, 1982 with a 20 percent disability of her left hand. He recommended that she attempt to return to her employment. Dr. Ledbetter’s examination in May, 1983, did not alter his 1982 opinion.
Dr. Milstead, an orthopedic surgeon, examined plaintiff in May and June, 1983. His reports show that a Finkelstein’s test, bringing the thumb toward the palm, to gauge plaintiff’s pain, was positive. Plaintiff was injected with celestone and xylo-caine to relieve her pain. At the next examination, Dr. Milstead re-injected plaintiff with celestone and offered to perform additional exploratory surgery upon request. He also recommended that she. continue therapy.
The employer ceased paying benefits in September, 1983. Suit was filed about one month later. Plaintiff was examined in 1984 by Dr. Morgan, a hand specialist. He believed plaintiff was then unable to work and rated the permanent partial disability of her left hand at 15 percent. He thought, however, that additional surgery would diminish her pain and disability and would probably allow her to return to work.
Plaintiff underwent a second operation on her wrist on September 27, 1984. Dr. Milford, a hand specialist in Memphis, Tennessee, performed the surgery. Dr. Milford examined plaintiff in October and in December, 1984. He opined that plaintiff was disabled for the “particular job” of glove stitcher because the repetitive movements would cause pain but thought she could perform some other less repetitive “form of work” without too much pain. He characterized plaintiff’s disability at 15 percent of her left hand.
After plaintiff entered a preliminary default against her employer, compensation benefits were reinstated pending trial and final judgment in plaintiff's action. Plaintiff had not returned to work when the ease was tried in February, 1985. She said pain in her left wrist still persisted after the second operation. Plaintiff’s husband and mother testified she was active and working before her injury, but afterwards became increasingly inactive, constantly complaining of pain in her hand.
The trial court found plaintiff to have only a 20 percent loss of use of her left hand under § 1221(4) and recalled the preliminary judgment. The judgment appealed rejects plaintiff’s demands.
To recover benefits under the law, an employee must establish that he received a personal injury by accident arising out of and in the course of his employment. Disability is compensable only if it results from a work-related accident. LSA-R.S. 23:1031; Lattin v. Hica Corp., 395 So.2d 690 (La.1981). The employer stipulated that plaintiff’s injury was work-related. Hence, the initial issue presented for our review is whether the trial court erred in not finding plaintiff disabled within the meaning of the law then in effect.
At the time of plaintiff’s injury, total disability was defined as the inability “to engage in any gainful occupation for wages whether or not the same or a similar occupation as that in which the employee was customarily engaged when injured and whether or not an occupation for which the employee, at the time of injury, was particularly fitted by reason of education, training, and experience ...” [Emphasis added.] See LSA-R.S. 23:1221(1) and (2); Dusang v. Henry C. Beck Builders, Inc., 389 So.2d 367 (La.1980).
*536 Partial disability, as defined in § 1221(3) is disability “to perform the duties in which [sjhe was customarily engaged when injured or duties of the same or similar character ... for which [s]he was fitted by education, training, and experience.” [Emphasis added.] See Lattin v. Hica Corp., supra; Daly v. L.E. Myers Const. Co., 419 So.2d 512 (La.App. 2d Cir.1982); and Marine v. Cornwall Equities, Ltd., 472 So.2d 70 (La.App. 4th Cir.1985), writ denied, 477 So.2d 104 (La.1985).
Plaintiff failed to prove permanent and total disability. Plaintiff, however, is partially disabled because the evidence is un-controverted that she cannot work as a glove stitcher, the duties which she was customarily performing at the time of her injury. Dr. Milford, the hand specialist who performed plaintiffs second operation, clearly opined that plaintiff was disabled to perform as a glove stitcher because the repetitive movements would cause too much pain. Equally forceful, however, was his opinion that she could perform some other and less repetitive form of work with her left hand without it being too painful.
Although plaintiff suffers from a 20 percent disability of her non-dominant hand, she is a high school graduate who has a beauty operator’s license with working experience as a beautician. The evidence shows only that plaintiff cannot engage in repetitive movements such as those demanded of a glove stitcher. Her disability may not necessarily negate her ability and capacity to work perhaps as a beautician. It is shown that her employer offered her vocational rehabilitation training in 1983, and employment at four other jobs. Plaintiff declined these offers.
We conclude plaintiff is partially disabled under the § 1221(3) definition. Plaintiff also falls within the specific loss provision set forth in § 1221(4)(e), (o) with a 20 percent disability or loss of use of her hand. Plaintiff cannot recover compensation for both the specific loss and the permanent partial disability, but she is entitled to the more favorable remedy. Jacks v. Bannister Pipelines America, 418 So.2d 524 (La.1982).
Under § 1221(4)(e), (o) plaintiff is entitled to 20 percent of $136.78 (which represents 66%rds of her wages per week) for 150 weeks, or $4,099.90. Under § 1221(3) she entitled to 662/srds of the difference between the weekly wages she was earning at the time of injury and any lesser weekly wages which she may actually earn during the period of her disability, not beyond a maximum of 450 weeks and subject to the credits allowed by law.
Because plaintiff has already been paid $15,319.36 in compensation benefits and is not shown to have worked after her injury, her most favorable remedy lies under § 1221(3).
PENALTIES AND ATTORNEY’S FEES
Plaintiff argues that the termination of her compensation benefits on September 7, 1983, was arbitrary, capricious, and without probable cause, entitling her to penalties and attorney’s fees. We agree.
In determining whether discontinuance of payment was arbitrary or without probable cause, the facts must be examined as they were existing and known to the insurer at the time payments were terminated. Patin v. Continental Casualty Co., 424 So.2d 1161 (La.App. 1st Cir.1982), writ denied, 429 So.2d 145 (La.1983).
Defendants had the medical reports of Dr. Ledbetter and Dr. Milstead when benefits were discontinued. Defendants rely heavily on Dr. Ledbetter’s August, 1982 report which recommended that plaintiff try to perform the functions of her employment. His reports did not state, however, that she would be able to resume her former occupation, but only recommended that she attempt or try to perform her duties as a stitcher. His report further recommended that plaintiff return to him after two weeks to allow him to evaluate her response to her performance. Dr. Mil-stead’s reports clearly showed objective findings of pain in plaintiff’s wrist as late as May, 1983. Dr. Ledbetter’s reports did not justify the termination of benefits.
*537 Defendants further argue that plaintiff had been paid all benefits to which she was entitled under the specific loss provisions of § 1221(4)(e), (o) when compensation payments were terminated.
By relying on Dr. Ledbetter’s reports and assuming plaintiff had been fully compensated under § 1221(4), defendants acted at their own peril. At best, Dr. Ledbetter’s reports were inconclusive as to whether plaintiff could resume the demands of her former job and work without pain. With obvious pain and resulting disability, plaintiff was entitled to the greater benefits afforded her under § 1221(3).
Under these circumstances, we hold plaintiff is entitled to the statutory penalties provided by LSA-R.S. 23:1201.2. See Thibodeaux v. Home Indemnity Co., 331 So.2d 142 (La.App. 3d Cir.1976), writ denied, 334 So.2d 433 (La.1976). Plaintiff is entitled to the 12 percent penalty on the number of weeks that are past due and owing, and all reasonable attorney’s fees for the prosecution and collection of such an amount. From this record, we determine that reasonable attorney’s fees in this case should be fixed at $5,000.00.
We need not address plaintiff’s contention that the trial court erred in setting aside the preliminary judgment. This issue became moot once the case was tried and reduced to judgment.
DECREE
The judgment of the trial court is re- ' versed and set aside. Judgment is hereby rendered in favor of Janice Dumas Ains-worth against defendants, Wells Lamont Corporation and Protective Insurance Company, decreeing plaintiff partially disabled under LSA-R.S. 23:1221(3) and entitled to 66%rds of the difference between the wages she was earning at the time of injury and any lesser wages she may actually earn thereafter, limited to a maximum of $136.78 per week for a period of 450 weeks from the date of injury, subject to credits the law allows, including the number of weeks during which compensation has been paid, with legal interest on each weekly benefit from the date it became due, together with penalties of 12 percent on all weekly amounts past due, and attorney’s fees of $5,000.00.
All costs here and below are assessed against the defendant.
REVERSED AND RENDERED.